# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

MARY L. AUSTIN, ET AL.,                                        PLAINTIFFS,

VS.                                          CIVIL ACTION NO. 4:04CV33-P-B

THE PROVIDENT BANK, ET AL.,                                 DEFENDANTS.

## MEMORANDUM OPINION

This matter comes before the court upon Plaintiffs' Motion to Remand [14-1]. Upon due consideration of the motion and the responses filed thereto the court is prepared to rule.

## I. FACTUAL BACKGROUND

On October 8, 2003 five plaintiffs joined in filing the instant case in the Circuit Court of Leflore County, Mississippi levying claims against a national bank and various Mississippi mortgage broker companies for alleged predatory lending practices associated with mortgage loans secured by the plaintiffs' real property. The Complaint sets forth twelve causes of action: (1) fraudulent inducement, misrepresentation, and concealment; (2) cancellation and removal of clouds from titles; (3) fraudulent conveyance; (4) rescission and cancellation; (5) injunction; (6) accounting; (7) unjust enrichment; (8) breach of fiduciary duty; (9) breach of duty of good faith and fair dealing; (10) tortious interference with a contract; (11) violation of the Mississippi Consumer Loan Broker Act and the Mississippi Mortgage Consumer Protection Act, Mississippi Code Annotated §§ 81-19-1 *et seq.* and 81-18-1 *et seq.*, respectively; and (2) intentional infliction of emotional distress.

In the Complaint, the plaintiffs disclaim any remedies under federal law, specifically disclaiming any remedies under, *inter alia*, the National Bank Act.

The plaintiffs' claims surround their basic allegation that:

> [T]he defendant lender acting in concert and conspiracy with the defendant mortgage brokers, entered into a deliberate, systematic pattern and plan of targeting to disadvantaged individuals in need of financing who were, because of their need and/or socioeconomic and financial conditions, more vulnerable to the defendants' practices, and sold to such persons, including these plaintiffs, **overpriced loans at interest rates which were outside the reasonable commercial standards of appropriate risk-based pricing, charging excessive, improper and fraudulent fees**, including broker fees and other charges and concealing these excessive charges, manipulating generally accepted underwriting standards and ratios for creditworthiness in order to qualify borrowers, including these plaintiffs, for loans in excess of their needs or ability to pay unnecessarily increasing the amount of the loan beyond the borrower's needs and best interests and then falsely representing to the plaintiffs/borrowers that such charges were reasonable, necessary and appropriate charges for obtaining their loans, and/or extending loans based on the borrowers' collateral rather than their ability to pay.

Complaint, ¶ 15 (emphasis added).

On February 13, 2004, Provident removed this case to federal court based on its arguments that this court possesses federal diversity jurisdiction because of fraudulent misjoinder and joinder (arguments that have since been abandoned) and federal question jurisdiction based on the bankruptcy filings of one or more of the plaintiffs and based upon complete preemption of the National Bank Act.

With respect to federal question jurisdiction, the plaintiffs argue in their motion to remand that the court should abstain from exercising bankruptcy jurisdiction either under the doctrine of mandatory abstention or discretionary abstention. They argue further that there is a lack of federal question jurisdiction because they disclaimed all federal remedies in their complaint and that, although the National Bank Act may preempt actions for usury against national banks, said act does not preempt state tort suits not alleging usury. As the plaintiffs put it

in their brief, all usurious interest may be excessive interest but not all excessive interest is usurious.

Provident responds that despite the plaintiff's artful pleading, their basic allegations involve claims for usury. In addition, Provident argues, all of the claims against them involve the real estate lending powers granted to them as a national bank by the National Bank Act and are therefore preempted by that Act. Provident posits that the Office of the Comptroller of the Currency's January 13 2004's regulation found in 12 C.F.R. § 34.4, read in conjunction with the U.S. Supreme Court's ruling in *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003) (holding that the National Bank Act provided exclusive cause of action for usury against national banks), requires a finding that this case is preempted by the National Bank Act even if the case does not specifically allege usury. This is because the instant case alleges, among other things, "interest rates which were outside the reasonable commercial standards of appropriate risk-based pricing, [and] ...excessive, improper and fraudulent fees." According to the defendants, this language in the Complaint is a clever mirage to avoid preemption of the National Bank Act.

### III. DISCUSSION

**A. Standards for Remand**

The burden is on the party seeking to preserve the court's removal jurisdiction to show that the requirements for removal have been met. *E.g., Sid Richardson Carbon & Gasoline Co.v. Interenergy Resources, Ltd.*, 99 F.3d 746 (5th Cir. 1996). The cases are legion that stand for the proposition that if federal subject matter jurisdiction via removal is doubtful, then the case should be remanded. *E.g., Spillers v. Tillman*, 959 F.Supp. 364 (S.D.Miss. 1997). On considering a motion to remand, a federal court is limited solely to the jurisdictional question of its authority to

hear the case. *Buchner v. FDIC*, 981 F.2d 816 (5th Cir. 1993).

**B. Bankruptcy Jurisdiction**

Under 28 U.S.C. § 1334(b), a defendant may remove a case from state court if it arises under, arises in, or is related to a bankruptcy petition. For a case to arise *under* Title 11, the claims asserted must be predicated on a right created by Title 11. *See e.g., In re Chargit, Inc.*, 81 B.R. 243 (Bankr. S.D.N.Y. 1987). Cases arising *in* Title 11 are those not based on any express right of Title 11 but would have no existence outside bankruptcy. *Matter of Wood*, 825 F.2d 90 (5th Cir. 1987). Since the instant case is a state tort action filed before the bankruptcy petitions filed by Ray and Willie Mae Weathers and Mary L. Austin, this case clearly neither arises under nor arises in Title 11.

A case that neither arises under nor arises in Title 11 can nevertheless be properly removed to federal court under § 1334(b) if it is "related to" a bankruptcy proceeding. Determining whether a proceeding is "related to" Title 11 is significant because the district court (either the district judge or the bankruptcy judge) to whom cases have been referred can exercise jurisdiction over both core and noncore proceedings so long as the proceedings are "related to" the underlying bankruptcy case. *Matter of Wood*, *supra*. The statutes do not define "related to" and the courts have articulated various definitions. The Fifth Circuit Court of Appeals recently held that proceedings "related to" a bankruptcy case include (1) causes of action owned by the debtor which become property of the estate under the Bankruptcy Code, and (2) suits between third parties which have an effect on the bankruptcy estate. *Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001). Similarly, the Seventh Circuit has held that a case is "related to" a bankruptcy proceeding if the dispute affects the amount of property available for distribution or the

4

allocation of property among creditors. *Matter of Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987).

The court concludes that the instant case is indeed "related to" the plaintiffs' pending bankruptcy petitions, which most assuredly should have been mentioned as a contingent interest on the petitions, because monies recovered, if any, from this case will be property of their bankruptcy estates. Accordingly, this court does have jurisdiction based on 28 U.S.C. § 1334(b).

**C. Abstention**

The plaintiffs argue that even if the court concludes that it possesses bankruptcy jurisdiction over this case, the court should abstain from exercising that jurisdiction based upon the doctrines of mandatory or discretionary abstention.

*1. Mandatory Abstention*

Commensurate with 28 U.S.C. § 1334(c)(2), the court's abstention from exercising bankruptcy jurisdiction is mandatory if (1) a party files a timely motion to abstain; (2) the underlying proceeding is based on state law; (3) the proceeding is related to a case under Title 11 but does not arise under or arise in Title 11; (4) the proceeding is one which could not have been brought in federal court absent the bankruptcy proceeding; and (5) the proceeding is one which can be timely adjudicated in state court. *E.g., In re S.E. Hornsby & Sons Sand and Gravel Co., Inc.*, 45 B.R. 988 (Bankr. M.D. La. 1985).

Ostensibly, the plaintiffs can establish all elements required for mandatory abstention. However, 28 U.S.C. § 157(b)(4) provides that "[n]on-core proceedings under 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." As discussed above, the underlying case does not arise in or under Title 11, but rather is only "related to" Title 11. A "related to" case, by definition, is a non-core

5

proceeding. *Matter of Boughton*, 49 B.R. 312, 315 (Bankr. N.D.Ill. 1985). Therefore, the doctrine of mandatory abstention is inapplicable to the instant case.

*2. Discretionary Abstention*

The doctrine of discretionary abstention can be found in 28 U.S.C. § 1334(c)(1) which states: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

Through § 1334(c)(1), Congress intended that concerns of judicial convenience and comity should be met by the discretionary exercise of abstention when appropriate, not by rigid limitations on federal jurisdiction. *Matter of Wood*, *supra*. Discretionary abstention may be compelling where a state proceeding sounds in state law and has only a limited connection with the debtor's bankruptcy case. *In re Titan Energy, Inc.*, 837 F.2d 325 (8th Cir. 1988).

Given that the instant case has only a tenuous relationship to the three plaintiffs' pending bankruptcy petitions, the court concludes that it will abstain from exercising its bankruptcy jurisdiction in the interests of justice, comity with Mississippi courts, and respect for Mississippi law.

**D. Federal Question Jurisdiction Based on the National Bank Act**

In 2003, the Supreme Court in *Beneficial, supra* held that a case filed under a state's usury laws is completely preempted by the National Bank Act. 539 U.S. at 11. In January 2004, the Office of the Comptroller of the Currency, who has the authority to issue regulations related to the National Bank Act, issued 12 C.F.R. § 34.3 which provides in relevant part:

(a) Except where made applicable by Federal law, state laws that

> obstruct, impair, or condition a national bank's ability to fully exercise
> its Federally authorized real estate lending powers do not apply to national
> banks. Specifically, a national bank may make real estate loans under 12
> U.S.C. 371 and § 34.3, without regard to state law limitations concerning:
> ... (3) Loan-to-value ratios; (4) The terms of credit ...(5) The aggregate
> amount of funds that may be loaned upon the security of real estate;
> (9) Disclosure and advertising, including laws requiring specific statements,
> information, or other content to be included in credit application forms, credit
> solicitations, billing statements, credit contracts, or other credit-related
> documents; (10) Processing, origination, servicing, sale or purchase of, or
> investment or participation in, mortgages; ... [and] (12) Rates of interest on
> loans ....
>
> (b) State laws on the following subject are not inconsistent with the real estate
> lending powers of national banks and apply to national banks to the extent that
> they only incidentally affect the exercise of national bank's real estate lending
> powers: (1) Contracts; [and] (2) Torts; ....

In its decision remanding the case of *Hines et al. v. Bank of America, et al.*, Cause Number 2:03CV64, this court held that the Supreme Court's decision in *Beneficial* that state usury claims are completely preempted by the National Bank Act did not apply to the facts of *Hines* because there was no specific claim of usury. Indeed, the claims asserted in *Hines* were similar to those asserted here. The court in *Hines*, however, did not consider the effect of the OCC's 2004 promulgation of 12 C.F.R. § 34.3.

It is difficult to read the basic nucleus of facts giving rise to the twelve claims asserted in the case at bar without noticing the relationship those claims have with § 34.3. Although the Complaint never makes use of the term "usury," nor does it seek redress under a state usury statute like the complaint in *Beneficial*, it clearly seeks remedies for the charge of excessive interest and fees from national banks in connection with real estate loans. With respect to interest, § 34.3(12) appears to preempt claims related to the "rates of interest on loans" without regard to whether those rates are *per se* usurious. The phrase "interest rates which were outside

7

the reasonable commercial standards of appropriate risk-based pricing" clearly falls within the ambit of § 34.3(12)'s "rates of interest on loans."

Other claims also seem covered by § 34.3. For example, subsection (a)(9) covers "disclosures in credit-related documents, including information to be included in credit applications and other credit-related documents." This relates to the plaintiffs' claims that the defendants procured false, fraudulent, and inaccurate documentation concerning the plaintiffs' mortgage loan applications and that the defendants provided the loan closing attorneys with false and/or misleading data from which the loan documents were prepared. Subsection (a)(5) regarding "aggregate amount of funds that may be loaned upon the security of real estate" speaks to the plaintiffs' claim that the defendants extended "loans in excess of their needs or ability to pay unnecessarily increasing the amount of the loan beyond the borrower's needs and best interests." The plaintiffs' claims of exorbitant fees and expenses in connection with the loans, excessive and improper fees falsely represented to the borrowers, and misrepresentations of costs that the plaintiffs would incur to borrow monies to purchase properties fall within the general realm of subsection (a)(4)'s "terms of credit" provision. What is more, 12 C.F.R. § 7.4001's definition of "'interest' as used in 12 U.S.C. § 85 " includes any payment compensating a creditor or prospective creditor for an extension of credit, [or ] making available a line of credit .... It includes, *among other things*, the following fees connected with credit extension or availability: numerical periodic rates, late fees, [etc.]." 12 C.F.R. § 7.4001 (emphasis added). It is likely that this definition of "interest" would include some of the fees charged to the plaintiffs that were allegedly excessive.

In general, state regulation is preempted if it will "significantly interfere with the national

bank's exercise of its powers." *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 33 (1996). While it is true that § 34.3(b) provides that state laws on contracts and torts are not necessarily inconsistent with the real estate lending powers of national banks, thereby avoiding preemption by the National Bank Act, subsection (b) goes on to say that such state law on torts or contracts "apply to national banks to the extent that they only incidentally affect the exercise of" those powers.

The wording of the Complaint seems on the surface seek redress under Mississippi contract and tort law – *i.e.*, primarily under fraud. However, allowing redress under these state tort and contract laws for the instant claims would not result in an incidental effect upon the exercise of a national bank's real estate lending powers granted by the National Bank Act, 12 U.S.C. § 85. Rather, such redress would circumvent preemption of the National Bank Act and the aforementioned regulations promulgated by the OCC.[1]

In order to determine whether a cause of action confers federal question jurisdiction, the court examines the plaintiffs' well-pleaded complaint. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the fact of plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).. However, the well-pleaded complaint rule has exceptions. One exception applies when Congress so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *Arcana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003). One court has noted that

---

[1] "Federal regulations have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982)

"[t]he only statutes that completely preempt state law are the Labor Management Relations Act, the Employee Retirement Security Act, and the National Bank Act." *Amalgamated Gadget v. Mack*, 2004 WL 549483, * 5 (N.D.Tex. 2004) (citing *Beneficial*, 529 U.S. at 559-60).

Having considered the Supreme Court's decision in *Beneficial* combined with 12 C.F.R. § 34.3 and the National Bank Act, 12 U.S.C. §§ 85 and 86, the court concludes that the claims asserted by the plaintiffs in the instant case under Mississippi law that relate to Provident's real estate lending powers granted by the National Bank Act are preempted by that Act. Consequently, the court concludes that it possesses federal question jurisdiction over said claims against the national bank. The court will assert supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining claims, in addition to those asserted against the Mississippi mortgage broker defendants.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the Plaintiffs' Motion to Remand [14-1] should be denied. Accordingly, and Order shall issue forthwith,

**THIS DAY** of July 25, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE